**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| **CEDAR LANE TECHNOLOGIES,** | : | |
| **Plaintiff,** | : | **1:25-cv-7845 (ALC)** |
| **-against-** | : | **<u>OPINION AND ORDER</u>** |
| **CITY NATIONAL ROCHDALE, LLC,** | : | |
| **Defendant.** | : | |

**ANDREW L. CARTER, JR., United States District Judge:**

Plaintiff Cedar Lane Technologies ("Cedar Lane" or "Plaintiff") brings this patent infringement action against Defendant City National Rochdale, LLC ("CNR" or "Defendant"). Cedar Lane alleges infringement of United States Patent 8,577,782 (the "Patent-in-suit" or "'782 Patent"), titled "Trading with conditional offers for semi-anonymous participants."

Pending before the Court is CNR's motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). ECF No. 24. CNR argues that the '782 Patent is drawn to patent-ineligible subject matter and is therefore invalid under § 101 of the Patent Act, 35 U.S.C. § 101, and that Plaintiff's patent infringement claims fail as a matter of law. For the reasons articulated below, Defendant's Motion to Dismiss is **GRANTED**, and this matter is dismissed without prejudice.

## BACKGROUND

*Factual Background*

The following facts are taken from the Amended Complaint and the underlying patent and are presumed to be true for purposes of this Motion.

Cedar Lane is the assignee of all right, title, and interest in the '782 Patent. FAC ¶ 8. The '782 Patent claims a method providing "techniques for trading with conditional offers for semi-

anonymous participants." '782 Patent, 7:32-34. The Patent's description notes that "many modern trading systems are structured so that the identity of Takers," defined as "trading entities with an offer to buy a trading item," and "Providers," defined as "trading entities offering a trading item," is "unknown to the other participant." *Id*. at 2:50-52. The patent notes that the "inventor has recognized that it would be advantageous to both Takers and Providers if prices could be set based on some knowledge of the transacting parties." *Id.* at 2:54-57. The invention seeks to solve this problem by providing "techniques that enable informed, semi-anonymous, trading based on stored knowledge of the trading history of one or more participants, without revealing the exact identify of the trading parties." *Id*. at 2:59-63.

The Patent recites 32 claims; Claim 20 is representative:

> 20. A method comprising:
>
> associating a plurality of trading entities each with an identifier using a processor implemented at least partly in hardware;
>
> acquiring trade history information including a histories of trading transactions associated with a plurality of said identifiers using a processor implemented at least partly in hardware;
>
> generating profiles of said trading entities based on said histories, each said profile containing information that indicates whether trading transactions associated with a trading entity would generate a profit; and
>
> generating different offers to buy or to sell a trading item to different trading entities based on the profiles of individual trading entities, the offer being processed through an exchange that processes trading transactions for items having a bid/offer spread, using a processor implemented at least partly in hardware.

*Id*. at 12:48-65; *see also Discussion, Section I*, *infra* (discussing representativeness). The Patent specifies one calculation that the described invention would use to determine "whether trading transactions associated with a trading entity would generate a profit." *See id.* at 4:50-65. The Patent does not specify whether this equation is conventional in the field.

*Procedural Background*

Cedar Lane filed suit on September 22, 2025, alleging infringement of the '782 Patent. ECF No. 1. CNR filed a Motion to Dismiss the Original Complaint. Instead of responding to the Motion, Cedar Lane amended their Complaint to add additional allegations regarding the '782 Patent. *See* ECF No. 21.

CNR again moved to dismiss the Complaint. *See* ECF No. 24-25 (ECF No. 25 cited herein as "Mot."). First, CNR argued that the asserted patent is ineligible under 35 U.S.C. § 101. CNR also argued that the Amended Complaint fails to state a plausible direct or induced patent infringement claim. Plaintiff filed an opposition to the Motion on March 6, 2026. ECF No. 32. Defendant filed their reply on March 20, 2026. ECF No. 36. The Motion is now fully briefed.

**STANDARD OF REVIEW**

Patent eligibility "may be, and frequently has been, resolved on a Rule 12(b)(6) or (c) motion where the undisputed facts, considered under the standards required by that Rule, require a holding of ineligibility under the substantive standards of law." *PersonalWeb Technologies LLC v. Google LLC*, 8 F.4th 1310, 1314 (Fed Cir. 2021) (quoting *SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1166 (Fed. Cir. 2018)). Patent ineligibility is an "affirmative defense to a claim of infringement," and a finding of ineligibility may be found "when the facts supporting the defense appear on the face of the complaint and other materials a court may consider, like an attached patent." *SitNet LLC v. Meta Platforms, Inc.*, 2024 WL 1178300, at *2 (S.D.N.Y. 2024) (cleaned up) (citing *In re Nine W. LBO Sec. Litig.*, 87 F.4th 130, 142 (2d Cir. 2023)).

To survive a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows

the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The plaintiff must allege sufficient facts to show "more than a sheer possibility that a defendant has acted unlawfully," and accordingly, where the plaintiff alleges facts that are "'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

In evaluating patent eligibility, the court must accept as true all facts alleged in the Amended Complaint and draw all reasonable inferences in Cedar Lane's favor. *See Guvera IP Pty Ltd. v. Spotify, Inc.*, 2022 WL 4537999, at *2 (S.D.N.Y. 2022) (citing to *Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 124 (2d Cir. 2008)). However, the court need not credit "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 555 (2007)). Instead, the complaint must provide factual allegations sufficient "to give the defendant fair notice of what the claim is and the grounds upon which it rests." *Port Dock & Stone Corp. v. Oldcastle Northeast, Inc.*, 507 F.3d 117, 121 (2d Cir. 2007) (citing *Twombly*, 550 U.S. at 555). In addition to the factual allegations in the complaint, the court may consider "the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." *Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*, 602 F.3d 57, 64 (2d Cir. 2010) (citation and internal quotation marks omitted).

## DISCUSSION

### I. Use of Claim 20 as Representative

The patent challenger has "the initial burden to make a prima facie showing that the group of claims are 'substantially similar and linked to the same' ineligible concept." *Mobile Acuity v. Blippar Ltd.*, 110 F.4th 1280, 1290 (Fed. Cir. 2024) (quoting *Cleveland Clinic Found. v.*

*True Health Diagnostics LLC*, 859 F.3d 1352, 1360 (Fed. Cir. 2017)). The patentee then must "present non-frivolous arguments as to why the eligibility of the identified representative claim cannot fairly be treated" as representative of the eligibility of all challenged claims. *Id.*

Defendant argues that Claim 20 of the '782 Patent is representative. *See* Mot. at 14-15. Plaintiff does not dispute that Claim 20 is representative and the claim chart attached to Plaintiff's Amended Complaint only references Claim 20. *See* ECF. 21-2. Upon review of the '782 Patent and Defendants' arguments regarding representativeness, the Court agrees that Claim 20 is can be treated as representative because there is no "distinctive significance of any claim limitations other than those included" in Claim 20. *Affinity Labs of Texas, LLC v. DIRECTV, LLC*, 838 F.3d 1253, 1256 n. 1 (Fed. Cir. 2016).

## II. *Mayo/Alice* Analysis

"Whether a claim is drawn to patent-eligible subject matter under § 101 is a threshold inquiry." *Quantum Stream Inc. v. Charter Communications, Inc.*, 309 F.Supp.3d 171, 181 (S.D.N.Y. 2018) (cleaned up). The Patent Act defines patent-eligible subject matter as "any new and useful process, machine, manufacture, or composition of matter, any new and useful improvement thereof." 35 U.S.C. § 101. There is an "important explicit exception: [l]aws of nature, natural phenomena, and abstract ideas are not patentable." *Alice Corp. v. CLS Bank Int'l*, 573 U.S. 208, 216 (2014) (citation omitted).

Whether the claim is "drawn to patent-eligible subject matter" is a "pure question of law." *Id*. (citation omitted). Because all patents are "presumed valid" under the Patent Act, the challenging party "bears the burden of proving invalidity by clear and convincing evidence." *Quantum Stream*, 309 F.Supp.3d at 181 (citing *Lumen View Tech. v. Findthebest.com, Inc.*, 984 F.Supp.2d 189, 194 (S.D.N.Y. 2013). The burden "stays with the patent challenger at all times."

*Mobile Acuity*, 110 F.4th at 1290 (citing *Cellspin Soft, Inc. v. Fitbit, Inc.*, 927 F.3d 1306, 1319 (Fed. Cir. 2019).

The Supreme Court has developed a two-step test for examining patent eligibility, as described in *Alice*. Under step one, the Court first "determine[s] whether the claims at issue are directed to a patent ineligible concept, such as an abstract idea." *In re TLI Communications LLC Patent Litigation*, 823 F.3d 607, 611 (Fed. Cir. 2016) (cleaned up) (citing *Alice*, 573 U.S. at 217). The Court "must articulate what the claims are directed to with enough specificity to ensure the step one inquiry is meaningful." *Linfo IP, LLC v. Trustpilot, Inc.*, 761 F.Supp.3d 679, 685 (S.D.N.Y. 2025) (citing *Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc.*, 880 F.3d 1356, 1361 (Fed. Cir. 2018)). If the patent is directed at such a concept, the Court turns to step two and must "consider the elements of each claim both individually and as an ordered combination to determine whether the additional elements transform the nature of the claim into a patent-eligible application." *Id*. (cleaned up) (citing *Alice*, 573 U.S. at 217). The Supreme Court has called this second step "a search for an 'inventive concept,'" meaning that the "patent in practice" must "amount[] to significantly more than a patent upon the ineligible concept itself." *Alice*, 573 U.S. at 217-18 (alteration omitted) (citing *Mayo Collaborative Servs. v. Prometheus Laboratories, Inc.*, 566 U.S. 66, 71 (2012)).

The Court finds that the '782 patent is directed at an abstract idea and Plaintiff has failed to articulate an inventive concept sufficient to confer patent eligibility.

**a. *Alice* Step One: Abstract Idea**

As step one of the test articulated in *Mayo* and *Alice*, the Court must first "determine whether the claims at issue are directed to a patent-ineligible concept." *Alice*, 573 U.S. at 218.

The description of the ‘782 Patent details the “problem” that the patent seeks to fix: “that it could be advantageous to both Takers and Providers if prices could be set based on some knowledge of the transacting parties.”’782 Patent, 2:55-57. The Court concludes that the claim is directed at “providing a trader with additional financial information to facilitate market trades, an abstract idea.” *See Trading Tech. Int’l v. IBG LLC*, 921 F.3d 1378, 1384 (Fed. Cir. 2019).

It is certain that the first stage of the *Alice* injury looks at the “‘focus’ of the claims, their ‘character as a whole.’” *Electric Power Group, LLC v. Alstom S.A.*, 830 F.3d 1350, 1354 (Fed. Cir. 2016). Still, it may be appropriate to inquire whether the claim at issue is a “combination of…abstract-idea processes,” and is “therefore directed to an abstract idea.” *Id.*

The first three actions in the “specific, ordered sequence of operations” in Claim 20 involve collecting and analyzing information, which the claim describes as “acquiring trade history information” associated with identifiers and generating a profile based on such information. Opp. at 13; ‘782 Patent, 12:48-65. The collection and presentation of information is undoubtedly an abstract idea. *See Electric Power Group*, 830 F.3d at 1353 (Fed. Cir. 2016) (“we have treated collecting information, including when limited to particular content (which does not change its character as information), as within the realm of abstract ideas”); *SAP America, Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1167 (Fed. Cir. 2018) (“claims focused on ‘collecting information, analyzing it, and displaying certain results of the collection and analysis’ are directed to an abstract idea”); *Digitech Image Tech., LLC v. Electronics for Imaging, Inc.*, 758 F.3d 1344, 1351 (Fed. Cir. 2014) (“a process that employs mathematical algorithms to manipulate existing information to generate additional information is not patent eligible”).

Plaintiff disagrees, stating that that the claimed method was not “capable of being performed in the human mind.” FAC at ¶ 21. Presumably, Plaintiff is arguing that the method

could not be performed with the human mind because the operations "occur at speeds and volumes impossible for human cognition." *Id.*[1] This argument finds no support in caselaw. A method is not patent eligible simply because it "require[s] operations that a human could not perform as quickly as a computer." *Trintiy Info Media, LLC v. Covalent, Inc.*, 72 F.4th 1355, 1364 (Fed Cir. 2023); *see also Electric Power Group*, 830 F.3d at 1352-54 (finding patent ineligible a method that required, among other things, "detecting and analyzing events in real-time from the plurality of data streams from the wide area").

The final step in the claimed sequence is directed at varying pricing based on the collected information, which Plaintiff describes as "generating different offers to buy or sell a trading item." Opp. at 13. This final step, and claim 20 altogether, relates to the "fundamental economic concept" of varying prices based on improved information. *See OIP Technologies, Inc. v. Amazon.com, Inc.*, 788 F.3d 1359, 1363 (Fed. Cir. 2015) (finding patent-ineligible a claim that "broadly recites a 'method of pricing a product for sale'").

Plaintiff insists that the "claimed method is plainly directed to technological improvement," as it describes a "concrete improvement to the efficiency and functionality of electronic trading systems." Opp. at 11. Plaintiff's argument, which centers on the improved computational efficiency of "the trading system's matching algorithms," skips to step two.[2] *See Intellectual Ventures I LLC v. Capital One Bank (USA)*, 792 F.3d 1363, 1367 (Fed Cir. 2015)

---

[1] Plaintiff also claims that a human mind cannot "generat[e] statistical profiles, "stor[e] those profiles in database structures," or "automatically generat[e] differentiated offers." FAC at ¶ 21. Plaintiff misapprehends the question at issue. Step one is concerned with whether the steps describe "computational methods which can be performed entirely in the human mind." *CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1373 (Fed. Cir. 2011). The inquiry is not whether the human mind is capable of "generating statistical profiles," for example, but rather whether it can perform the "algorithmic analysis of trade histories" for an individual trader. *See* FAC ¶ 21.

[2] Plaintiff regularly refers to "efficiency" in trading systems in its Opposition. Notably, the word "efficiency," nor any variants thereof, does not appear in the text of the '782 patent. The "efficiency" that Claim 20 purportedly improves is "systemic" or "computational" efficiency, not improved efficiency of the computer itself. *See* Opp. at 12 (referring to "systemic inefficiency," "computational inefficiency," and an "inefficient uniform pricing mechanism).

(addressing at "the second step of *Alice*," whether "claiming the improved speed or efficiency inherent with applying the abstract idea on a computer provide[s] a sufficient inventive concept").

Despite Plaintiff's protests, Claim 20 is directed at a process, *i.e.,* differentiated pricing in securities trading, for which the computer is "invoked merely as a tool." *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1335-36 (Fed Cir. 2016) (internal quotation marks omitted). The "plain focus of the claims is on…economic…tasks for which a computer is used in its ordinary capacity." *Id*. at 1336; *see also OIP Technologies*, 788 F.3d at 1364 ("At best, the claims describe the automation of the fundamental economic concept of offer-based price optimization through the use of generic-computer functions."); *see also Trading Tech. Int'l, Inc. v. IBG LLC*, 921 F.3d 1378, 1385 (Fed Cir. 2019) (claim is patent ineligible where it "does not improve the functioning of the computer, make it operate more efficiently, or solve any technological problem").

Plaintiff cites to *Koninklijke KPN N.V. v. Gemalto M2M GmbH* as support in arguing that the '782 Patent provides a non-abstract "technological improvement." 942 F.3d 1143, 1150-5 (Fed. Cir. 2019). In *Koninklijke*, the Federal Circuit found that the claim, a method that employed an error detection system that "prior art systems were previously not equipped to detect," to be patent-eligible. *Id*. *Koninklijke* is inapposite because of a key difference between the security system in *Koninklijke* and the '782 Patent. The *Koninklijke* security method claim was directed at an improvement of "computer capabilities," specifically "an improved check data generating device" that enables a system to detect errors "that prior art could not." *See id*. at 1145; *see also Finjan, Inc. v. Blue Coat Sys., Inc.*, 979 F.3d 1299, 1304-05 (Fed. Cir. 2018) (finding patent-eligible a method that "enable[d] a computer security system to do things it could not do before"). The reference to what prior art "could not" or was "unable" to do is important since

step one of the *Alice* framework "often turns on "whether the claims focus" on "improvement in computer capabilities." *Koninklijke*, 942 F.3d at 1145, 1149. The claimed method "solve[d] the problem" of a technological deficiency that caused "persistent systematic errors in data transmissions."

By contrast, the '782 Patent is concerned with what *some* of the prior art *does*, not what prior art is capable of. *See* 782 Patent 2:50-52 ("*Many* modern trading systems are structured" such that identity is not shared between participants) (emphasis added). Indeed, if '782 were based on an invention that introduced a function that the prior act could not perform, the result might be different. *Compare Intellectual Ventures I LLC v. Symantec Corp.*, 838 F.3d 1307, 1320 (Fed Cir. 2016) (finding that "[b]y itself, virus screening" "constitutes an abstract idea") *with Koninklijke*, 942 F.3d at 1145 (finding an improvement to computer capabilities that allowed computers to conduct additional forms of virus screening to be non-abstract). On these facts, however, the claim is plainly directed at an abstract idea.

Plaintiff analogizes this case to *Weisner v. Google, LLC*, 52 F.4th 1073 (Fed Cir. 2022), arguing that the facts here present a close question. Opp. at 11. This argument does not help Plaintiff's position. The Federal Circuit held that one of the patents challenged in *Weisner* presented a "much closer case" than the others—though not necessarily a "close case" as Plaintiff artfully claims—but that the use of the collected information as specified was nonetheless an abstract idea. *Id*. at 1084-85.

Because the Court finds that the claim is directed at an abstract idea, the Court proceeds to step two.

**b. *Alice* Step Two: Inventive Concept**

At *Alice* step two, the Court "search[es] for an inventive concept—i.e., an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself." *PersonalWeb Technologies LLC v. Google LLC*, 8 F.th 1310, 1318 (Fed Cir. 2021) (citing *Alice*, 573 U.S. at 217-18). We "consider the elements of the claim both individually and 'as an ordered combination' to determine whether the additional elements 'transform the nature of the claim' into a patent-eligible application." *Recentive Analytics, Inc. v. Fox Corp.*, 134 F.4th 1205, 1214 (Fed. Cir. 2025).

Plaintiff alleges that the Federal Circuit has recognized that "specific data processing techniques that improve technological outputs constitute inventive concepts."[3] Opp. at 14. Federal Circuit case law, however, provides no support to Plaintiff's position. The Federal Circuit has rejected a patent where the patentee claimed that the method created a more efficient pricing method with which "pricing decisions are made with more granularity." *OIP Tech.*, 788 F.3d at 1363. Moreover, "claiming the improved speed or efficiency inherent with applying the abstract idea on a computer" does not "provide sufficient inventive concept." *Intellectual Ventures I*, 792 F.3d at 1367 (citing *Bancorp Servs., LLC v. Sun Life Assurance Co. of Can.*, 687 F.3d 1266, 1278 (Fed. Cir. 2012) and *CLS Bank, Int'v. Alice Corp.*, 717 F.3d 1269, 1286 (Fed. Cir. 2013) (en banc) *aff'd*, *Alice*, 574 U.S. 208).

Plaintiff again cites to *Weisner* for support. Plaintiff, however, only addresses half of the holding in *Weisner*. The Court held that the patents were patent eligible because they "provided a specific solution to an Internet-centric problem." *Weisner*, 51 F.4th at 1087. As the Opinion in

[3] Plaintiff characterizes the claimed method as "improv[ing] technological outputs." The Court does not consider this to be an accurate representation of the purpose or function of the patent. As noted above, the patent is not directed toward technological improvement.

*Weisner* notes, it is not the specificity of the claim that creates the inventive concept, it is "the specific implementations for using the travel histories to prioritize the order of the search results that operate differently than the conventional methods and *solve an internet-centric problem*." *Id*. at 1086, n. 3 (emphasis added); *see DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1259 (Fed. Cir. 2014) ("the claimed solution amounts to an inventive concept for resolving this particular Internet-centric problem, rendering the claims patent-eligible").

Plaintiff appears to concede that the components of the claim are conventional. Opp. at 15. Plaintiff instead argues that there is nothing conventional about the specific arrangement of the components in the claimed method. The cases cited in the Opposition Brief do not lend much support to Plaintiff's argument. *BASCOM* concerned a specific combination of conventional parts to "improve an existing technological process." *BASCOM v. AT&T Mobility LLC*, 827 F.3d 1341, 1351 (Fed. Cir. 2016) (cleaned up); *see ChargePoint, Inc. v. Semaconnect, Inc.*, 920 F.3d 759, 769 (Fed. Cir. 2019) ("the claims in this case do not improve the technology the way the claims in *BASCOM* did"); *see also AlexSam, Inc. v. HealthEquity, Inc.*, 477 F. Supp. 3d 1227, 1234 (D. Utah 2020) ("the court does not mean to suggest that any new arrangement of conventional components will preclude a finding of patent ineligibility at the motion to dismiss stage under *Bascom*"). Even if the particular arrangement "offers a new way" of providing individualized pricing, "the novelty of an invention alone cannot avoid the problem of abstractness." *Linfo IP, LLC*, 761 F.Supp.3d at 690 (cleaned up) (quoting *In re Morsa*, 809 F. App'x 913, 918-19 (Fed. Cir. 2020) (per curiam)).

BASCOM, however, counsels that properly pleaded "specific improvements in the recited computer technology" may render an abstract idea patent eligible if the improvements "go beyond 'well understood, routine, conventional activities.'" *BASCOM*, 827 F.3d at 1348

(quoting *Alice*, 573 U.S. at 224) (alterations omitted). As the Court found in its step one above, the '782 Patent does not appear to be concerned with improving the actual technology. The Complaint makes several references to "efficiency," but those references appear to be concerned primarily with more efficient pricing, *see, e.g.,* Compl. at ¶ 13 (conventional system "resulted in inefficient pricing mechanisms"), as opposed to the efficiency of the relevant technology, *see Customedia Tech., LLC v. Dish Network Corp.*, 951 F.3d 1359, 1365 (Fed. Cir. 2020) (finding patents to be patent-ineligible where they "do not enable computers to operate more quickly or efficiently").

The Court recognizes that Plaintiff may be able to allege facts sufficient to show a technological deficiency in the capabilities of the prior art and a "concrete" improvement provided by the claimed invention. *See Enfish*, 822 F.3d at 1339 ("We recognize that, in other cases involving computer-related claims, there may be close calls about how to characterize what the claims are directed to. In such cases, an analysis of whether there are arguably concrete improvements in the recited computer technology could take place under step two.").

**CONCLUSION**

For the foregoing reasons, the Court finds that the claimed patent is ineligible. Defendant has carried their burden of establishing patent ineligibility by clear and convincing evidence. *Quantum Stream*, 309 F.Supp.3d at 181. In light of this conclusion, the Court does not consider Defendant's alternative grounds for dismissal. *See Trading Technologies International, Inc.*, 921 F.3d at 1386.

Plaintiff requests leave to amend to "add more detailed factual allegations regarding the state of the prior art." Opp. 24. Although leave to amend should be freely given "when justice so requires," Fed. R. Ci. P. 15(a)(2), it is "within the sound discretion of the district court to grant or

deny leave to amend," *Broidy Cap. Mgmt. LLC v. Benomar*, 944 F.3d 436, 447 (2d Cir. 2019). At this stage in the proceedings, the Court is not prepared to determine whether amendment would be futile. Accordingly, Cedar Lane is permitted to file an amended complaint to present an inventive concept as required under *Alice* step two. Plaintiff must fie the amended complaint by October 28, 2026. The parties shall file a joint status report by November 13, 2026, indicating whether Defendant seeks to file a motion to dismiss the amended complaint, and, if so, a proposed briefing schedule.

The Clerk of Court is respectfully directed to terminate ECF No. 24.

**Dated: September 30, 2026**
**New York, New York**

**ANDREW L. CARTER, JR.**
**United States District Judge**